IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs May 2, 2018

**CHRISTOPHER A. HOWARD v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Dyer County**
**No. 10-CR-160      R. Lee Moore, Jr., Judge**

_____

**No. W2017-01890-CCA-R3-PC**

_____

The Petitioner, Christopher A. Howard, appeals the post-conviction court's denial of his petition for post-conviction relief, arguing that his trial counsel provided ineffective assistance. After review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

Noel H. Riley, II, Dyersburg, Tennessee, for the appellant, Christopher A. Howard.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Danny Goodman, Jr., District Attorney General; and Lance E. Webb, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The Petitioner was convicted of aggravated robbery and attempted possession of .5 grams or more of cocaine with the intent to sell or deliver, and he was sentenced to an effective term of twelve years in the Department of Correction. State v. Christopher A. Howard, No. W2014-00099-CCA-R3-CD, 2014 WL 3954058, at *1 (Tenn. Crim. App. July 30, 2014). This court affirmed the Petitioner's convictions on direct appeal, and he did not seek further review. Id. at *1, *5.

The underlying facts of the case were recited by this court on direct appeal as follows:

Malcolm Turner testified that, on April 8, 2010, he and Marquawn Fletcher learned from the [Petitioner] that the [Petitioner] was going to drive from Sikeston, Missouri, to Dyersburg, Tennessee, to purchase nine ounces of cocaine from Omar DuBose in exchange for $9000. Turner testified that he and Fletcher devised a plan with the [Petitioner] to rob DuBose with guns and each take an ounce of cocaine, with the other seven ounces going to the [Petitioner]. The [Petitioner] provided Turner with a .38 revolver, and Fletcher obtained a nine-millimeter pistol. Turner admitted he planned to rob DuBose because he was mad about some bad drugs he had previously bought from DuBose and wanted to get his money back.

Turner and Fletcher drove from Sikeston, Missouri, to Dyersburg, Tennessee, in one car while the [Petitioner] drove another, carrying only $1400. When they arrived in Dyersburg, DuBose called the [Petitioner], after which they met at a motel. DuBose was with another man, Ronnie Mitchell. The [Petitioner] called Turner to tell him and Fletcher that he, DuBose, and Mitchell were going to Pizza Hut and to meet him there. After arriving at Pizza Hut, Turner jumped out of the car and approached the passenger side of the car in which the [Petitioner] and DuBose were seated. Turner then opened the door, and he and DuBose "got to tussling" when the gun went off, striking DuBose in the back of the leg. DuBose dropped the container of cocaine in which there were nine individual bags, each containing an ounce of cocaine. Additionally, Turner took a quarter of an ounce of cocaine from DuBose. Turner grabbed the container of cocaine while Fletcher robbed Mitchell of his jacket and cell phone. Turner and Fletcher finally jumped in the car and drove toward Missouri but were quickly apprehended by the police and taken into custody.

Turner said that, as a result of this arrest, he had pled guilty to aggravated robbery, for which he was sentenced to twelve years. Further, he pled guilty to related federal charges, for which he received a seven-year sentence.

Officer David Dodds of the Dyersburg Police Department testified that he stopped Turner's car going northbound from Dyersburg on I-55 and arrested both Turner and Fletcher at the scene. Officer Dodds found a large amount of cocaine behind the rear seat and two handguns in the glovebox.

- 2 -

Officer Jerry Mealer searched Turner and Fletcher and testified that they only had about $150 between them. Officer Billy Williams recovered Mitchell's jacket, cell phone, and iPod, as well as a cell phone belonging to DuBose.

Dana Parmenter, who formerly worked as a Special Agent Forensic Scientist for the Tennessee Bureau of Investigation ("TBI") Crime Laboratory in Memphis, testified that she tested one of the nine bags recovered from Turner's car. The bag she tested weighed 27.7 grams, but the total amount submitted weighed 270.2 grams, or nine and a half ounces, and tested positive for cocaine.

Officer Anna Cantu of the Dyersburg Police Department testified that DuBose approached her, saying he had just been shot. The [Petitioner] said that he and DuBose were going to eat at Pizza Hut and that he was sitting in the driver's seat when he heard "pow-pow and he didn't know anything else from there."

Marquawn Fletcher testified that he agreed to plead guilty to the lesser-included offense of facilitation of aggravated robbery and accepted a sentence of eight years in exchange for his truthful testimony regarding the April 8, 2010 incident. He admitted that he knew the [Petitioner] was parked at Pizza Hut in the same car as DuBose and that he and Turner left after Turner shot and robbed DuBose. Fletcher said DuBose had previously "shorted" him in a drug deal, and he wanted to get his money back. It was his idea to rob DuBose.

Omar DuBose testified that he had known the [Petitioner] for a "couple of months" but that he had never met Turner or Fletcher. DuBose admitted that he was involved in a drug deal to sell nine ounces of cocaine to the [Petitioner] for $9000 and was being driven by the [Petitioner] when he was shot and robbed of his cocaine.

Investigator Jim Joyner of the Dyersburg Police Department testified that based on his experience, a quantity as much as nine ounces of cocaine would be for resale, not personal use, and the street value of nine ounces of cocaine, or 270 grams, would be worth as much as $27,000. Investigator Joyner photographed the crime scene at Pizza Hut and collected one lead bullet from the front passenger seat of the car. He also found one hole in the front passenger seat of the car, a small scale in the grass behind the car, and a clear plastic bag, which contained white powder residue.

The [Petitioner] initially told Investigator Joyner that he did not know either Turner or Fletcher and then changed his story, claiming that he barely knew them. When the [Petitioner] was taken into custody, he only had about $1300 dollars on him. The [Petitioner] never said he had been robbed or that he was a potential target for the robbery. The [Petitioner] confirmed that after he arrived at the motel, DuBose called him and that he said, "I'm fixing to pull in the Pizza Hut and I'll holler at you when I get over there."

Christopher A. Howard, 2014 WL 3954058, at *1-2.

The Petitioner filed a pro se petition for post-conviction relief on April 11, 2016.[1] The Petitioner raised numerous complaints in his petition, including those pursued on appeal: that trial counsel was ineffective in failing to file a Giglio[2] motion to discover promises made for his co-defendant's testimony and failing to argue that his convictions violate double jeopardy.

At the evidentiary hearing, the Petitioner testified that he knew that deals were "made behind closed doors" to secure his accomplices' testimony against him, but trial counsel did not file a Giglio motion to discover the details of those agreements. He asserted that trial counsel never "had a case like this before" and did not know how to handle the issue. The Petitioner said that counsel discovered some of the information about the agreements, but he claimed that more information could have been discovered at a Giglio motion hearing. However, he admitted that he did not know the extent of counsel's knowledge about his accomplices' inconsistent statements and plea deals, and he acknowledged that counsel questioned both accomplices at trial about such.

The Petitioner claimed that the State committed misconduct by using false testimony from accomplice Malcolm Turner, who had given several inconsistent statements. The Petitioner said that Mr. Turner wrote a note exculpating him and continued to apologize to the Petitioner's family "to this day." The Petitioner also

---

[1] The State does not challenge the timeliness of the Petitioner's petition, noting that there is an indication in the record that the State had filed a motion to dismiss the petition based on the statute of limitations, and the trial court denied the motion in light of affidavits provided by prison employees.

[2] In Giglio v. United States, 405 U.S. 150 (1972), the Supreme Court held that the government must disclose promises made to witnesses that they would not be prosecuted in exchange for their cooperation with the government. Id. at 154. The court further found that non-disclosure of such promises equated to a violation of due process. Id.

- 4 -

claimed that Mr. Turner did not want to cooperate at trial and testified only after being reminded of the consequences of not keeping his deal with the State.

The Petitioner acknowledged that it "was brought up" at trial that his other accomplice Marquawn Fletcher was on probation or parole in Missouri. He recalled that the State requested permission to question Mr. Fletcher as a hostile witness and acknowledged that the jury saw how reluctantly Mr. Fletcher testified.

The Petitioner asserted that his convictions violated double jeopardy because he was convicted of stealing cocaine and possessing cocaine, and those convictions were essentially the same charge and should have been merged under State v. Charles Clevenger, No. E2012-01119-CCA-R3-CD, 2013 WL 2566191 (Tenn. Crim. App. June 7, 2013), perm. app. denied (Tenn. Oct. 16, 2013). He claimed that the evidence was clear that he never possessed the drugs and that his convictions were based solely on the testimonies of his accomplices who were promised leniency for testifying against him. The Petitioner said that the federal government dismissed a case against him for lack of evidence. He stated that he had been before the parole board five or six times, and each time he told the board that he did not have any drug convictions because he never possessed any drugs in this case.

The Petitioner complained that counsel did not attempt to get a transcript of the grand jury proceedings, claiming that he still did not understand how the State secured an indictment against him. However, he acknowledged that counsel filed a motion to discover information about the grand jury testimony. The Petitioner said that he did not realize that grand jury proceedings were not typically recorded and that usually a single police officer was the only witness at such a proceeding.

The Petitioner stated that he did not understand how he was arrested. He said that he helped put the victim in the ambulance, voluntarily drove to the police station afterwards, cooperated with the police, and did not have any drugs in his possession. He claimed that his arrest was a mistake that could have been rectified early on.

The Petitioner acknowledged that he agreed to a continuance of trial because it meant he could be released from custody immediately and that he went to Missouri after being released and did not come back for trial when it was scheduled. He agreed that he pled guilty to a charge of failure to appear and the sentence was aligned consecutively to his sentences in this case. The Petitioner admitted that counsel succeeded in ensuring that he was convicted of lesser offenses than which he was charged and convinced the trial court to sentence him as a Range I offender instead of as a Range II offender.

Trial counsel testified that he had practiced law for thirty-nine years and had tried criminal cases throughout his career. Counsel said that he did not remember making a comment that he had never handled a case like the Petitioner's and, if he did, it was not in the context portrayed by the Petitioner. Counsel recalled that the Petitioner was "a personable young man," and counsel investigated his case with even more zeal than usual and even tried to convince the State that the Petitioner was telling the truth. He said that the State offered the Petitioner a plea deal but not a promise of leniency in exchange for testimony.

Counsel testified that he did not file a Giglio motion because the district attorney had an open file policy, and he had "multiple opportunities" to look at the file and discuss the case with the prosecutors. He said that he had copies of the accomplices' prior statements and guilty pleas, and he knew that they had been offered leniency in exchange for their testimonies. He did not remember asking for a full background check on the accomplices, but he was aware of their criminal histories from the district attorney's file and information from the Petitioner. Counsel also talked to the accomplices' attorneys and knew what to expect from their testimonies at trial.

Counsel testified that he met with the Petitioner multiple times before trial. He and the Petitioner discussed the accomplices' likely testimonies, promises of leniency they received, their criminal histories, and their prior statements. Counsel noted that Mr. Turner, one of the accomplices, wrote a letter before trial trying to exonerate the Petitioner, and counsel questioned Mr. Turner about that at trial.

Counsel testified that, contrary to the Petitioner's view, he did not perceive a double jeopardy issue with the Petitioner's convictions because attempted possession with intent to sell or deliver the drugs required separate intent apart from the intent required to commit the robbery. Counsel said that the primary issue he saw in the case was the lack of evidence to corroborate the accomplices' testimonies.

Additionally, counsel said that he filed a motion to compel production of a transcript of the grand jury proceedings, but the district attorney's office told him that it was not recorded. Counsel spoke with the officer who presented the case to the grand jury, and that officer no longer remembered the details of the proceeding.

Further, counsel stated that he spoke to multiple officers involved in the case, but he could not say for sure that he spoke to all eight of them. Counsel recalled that the police initially thought that the Petitioner was also a victim, but that theory unraveled as they realized that the Petitioner, Mr. Turner, and Mr. Fletcher were all from the same town and the officers looked at the Petitioner's statement more closely.

In sum, counsel testified that he thought he did everything he could in the case, acknowledging that the jury returned a verdict for lesser-included offenses and the judge sentenced the Petitioner at a lower offender classification than the State requested.

At the conclusion of the hearing, the post-conviction court addressed each of the Petitioner's allegations and determined that the Petitioner failed to prove that counsel rendered deficient performance or that he was prejudiced by any alleged deficiency. With regard to the Petitioner's claim that trial counsel was ineffective in failing to file a Giglio motion to discover promises made for his co-defendant's testimony, the post-conviction court found that it was not necessary for counsel to file a Giglio motion because the district attorney had an open file policy giving counsel access to the information. With regard to the Petitioner's claim that counsel was ineffective in failing to argue that his convictions violate double jeopardy, the post-conviction court found that there was no double jeopardy issue because the charges had different elements.

## ANALYSIS

On appeal, the Petitioner argues that he received ineffective assistance of counsel because trial counsel failed to file a Giglio motion to discover promises made for his co-defendant, Mr. Turner's, testimony and failed to argue that his convictions violated double jeopardy.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v.

Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The Petitioner first argues that he received ineffective assistance of counsel because counsel failed to file a Giglio motion to reveal any promises made to Mr. Turner in exchange for his testimony. He notes that "it was revealed" at trial that Mr. Turner made a deal for leniency in exchange for his testimony and that counsel knew before trial that Mr. Turner was going to testify as a witness for the State. He asserts, therefore, that counsel should have suspected that there was a deal between Mr. Turner and the State and filed a Giglio motion to discover any information about such deal. The Petitioner's argument, however, disregards counsel's accredited testimony that not only did he know Mr. Turner was going to be a witness for the State, he knew about the plea agreement and promises of leniency made to Mr. Turner due to the district attorney's open file policy and counsel's conversations with Mr. Turner's attorney. Counsel brought all this

information out at trial. The Petitioner has failed to present any additional information counsel might have uncovered through a Giglio motion, or explain how any such information would have made a difference at trial in light of counsel's thorough investigation and cross-examination at trial. The Petitioner has failed to prove this allegation of ineffective assistance of counsel.

The Petitioner also asserts that he received ineffective assistance of counsel because counsel failed to argue that his convictions for aggravated robbery and attempted possession of .5 grams or more of cocaine with the intent to sell or deliver violated double jeopardy. He claims that "[b]ecause the attempted possession arose out of the same incident, it is an essential element of the aggravated robbery."

The prohibition against double jeopardy protects criminal defendants from "multiple punishments for the same offense." State v. Watkins, 362 S.W.3d 530, 541 (Tenn. 2012). "[A] single wrongful act may not furnish the basis for more than one criminal prosecution[,]" but "[i]f each offense charged requires proof of a fact not required in proving the other, the offenses are not multiplicitous." State v. Phillips, 924 S.W.2d 662, 665 (Tenn. 1996). In Tennessee, the test outlined in Blockburger v. United States, 284 U.S. 299, 304 (1932), is used to determine whether multiple convictions under different statutes violate the state constitutional double jeopardy prohibition against multiple punishment. Watkins, 362 S.W.3d at 556. The threshold inquiry in Blockburger is whether the convictions arise from the same act or transaction. Id. If this inquiry is answered in the negative, then double jeopardy is not implicated. Id. at 557. However, if the same act or transaction gives rise to multiple convictions, the court must determine whether the crimes constitute the same offense. Id. When the statutory definition of each offense includes an element not included in the other offense, then the offenses are distinct and double jeopardy is not implicated. Id.

The Petitioner relies on the unpublished case from this court of Charles Clevenger, 2013 WL 2566191, in support of his contention that his convictions violate double jeopardy. In Clevenger, a panel of this court determined that the defendant's convictions for aggravated robbery and simple possession of oxycodone were multiplicitous and violated double jeopardy because the defendant possessed the drugs as part of the "taking" required to commit the aggravated robbery, and the police located the defendant immediately after the robbery. 2013 WL 2566191, at *10-12. The panel in that case also observed that "[n]othing indicates that the appellant formed a new intent to possess the drug after he committed the robbery intending to take the drug." Id. at *12.

The case at hand differs significantly from Clevenger. The Petitioner's conviction for attempted possession of cocaine with intent to sell or deliver required a finding that the Petitioner attempted to possess the cocaine "with intent to manufacture, deliver or

- 9 -

sell" it. Tenn. Code Ann. § 39-17-417(a)(4). A factual finding of "intent to manufacture, deliver or sell" is completely absent from the crime of aggravated robbery, which required proof that the theft of the drug was "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Id. § 39-13-402; see also id. § 39-13-401 and § 39-14-103. Of note, the element of intent is also missing from the crime of simple possession that was deemed multiplicitous with an aggravated robbery conviction in Charles Clevenger, 2013 WL 2566191, at *12; see also Tenn. Code Ann. § 39-17-418(a). The Petitioner's convictions do not violate double jeopardy, and he has failed to prove that he received ineffective assistance because counsel failed to raise such an argument.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE